UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ARTHUR HARUVI and ESTHER HARUVI, | Civil Action No. |
| Plaintiffs, | |
| v. | |
| MICHELLE HARUVI, | **VERIFIED COMPLAINT** |
| Defendant, | |
| - and – | |
| 51D REALTY LLC, | |
| Nominal Defendant. | |

Plaintiffs Arthur Haruvi ("Arthur") and Esther Haruvi ("Esther", and collectively, "Plaintiffs"), by and through their undersigned attorneys, Holland & Knight LLP, as and for their Verified Complaint against Defendant Michelle Haruvi ("Michelle") and Nominal Defendant 51D Realty LLC (the "LLC"), hereby allege as follows:

## PRELIMINARY STATEMENT

1. This action arises from Defendant Michelle Haruvi's attempt to sell, without authorization and in secret, a Manhattan luxury condominium unit worth more than $3 million, and to abscond with the proceeds to the detriment of her parents, Plaintiffs.

2. The condominium unit is located at 322 West 57th Street, Apt 51D, New York, NY 10019 (the "Unit") in a luxury building known as "The Sheffield".

3. The Unit is owned entirely by Nominal Defendant 51D Realty LLC.

4. Plaintiffs are, and at all times have been, the only two members of the LLC.

5. On or about November 16, 2012, as part of Plaintiffs' estate planning and as a gift to their daughter, Arthur assigned to Michelle a 99% beneficial economic interest in the LLC (the "Assignment").

6. Plaintiffs intentionally retained their status as the only two members with the authority to manage and direct the LLC and the Unit, as well as a 1% economic interest in the LLC.

7. Plaintiffs' position is straightforward and governed by statute: the Assignment did not, and could not, effectuate a transfer of membership, management authority, or voting power in the LLC.

8. Under the New York Limited Liability Company Law, N.Y. Ltd. Liab. Co. Law §§ 101 et seq. (the "LLCL"), the assignment of an economic interest does not, by itself, make the recipient a member of the LLC, does not entitle the assignee to participate in management, and does not confer upon the assignee any of the rights or powers of a member.

9. An assignee may cross that threshold and become a member only through a formal process under the LLCL.

10. That process includes a vote and consent of the existing members to the admission of an individual as a member.

11. No such vote was ever held, no consent was ever given, and Michelle was never admitted as a member of 51D Realty LLC.

12. The distinction between a beneficial economic assignee and a member is the decisive fact in this case.

13. Plaintiffs intentionally retained their status as the only two members of the LLC, with all of the attendant voting and management rights, so that they could maintain exclusive authority and control over the LLC and the Unit.

14. Michelle holds only the right to receive her beneficial economic share of distributions when, and if, made.

15. She does not have the right to manage, control, bind, or vote on matters concerning

the LLC, and certainly has no authority to sell or otherwise dispose of the Unit.

16.     The LLC, from its inception, has never had an operating agreement.

17.     Its internal affairs are governed exclusively by its articles of organization and the default provisions of the LLCL, the former of which expressly provides that the authority to manage the LLC is solely and exclusively vested in its members.

18.     On or about June 8, 2026, Plaintiffs learned—not from Michelle, but from a building-wide notice circulated by The Sheffield's management announcing a "Private Preview Before Public Listing" of Unit 51D—that Michelle is quietly taking steps to sell the Unit out from under them, without their knowledge, consent, or authorization.

19.     Because the Unit is the LLC's sole asset, its sale requires the affirmative vote of a majority of the members pursuant to the LLCL.

20.     Michelle is not a member, holds no authority to vote, and has no authority to unilaterally sell or dispose of the Unit.

21.     Michelle's lack of authority is dispositive under any view of the facts.

22.     She is not a member and thus has no authority to control or direct the LLC's affairs.

23.     But even if she was treated as a member, she would still only be one member of a member-managed LLC with no power to act unilaterally.

24.     Even if she claimed the largest beneficial economic interest, it would not give her an automatic superior membership interest, nor would she be able to subvert the LLCL and sell the LLC's sole asset without the knowledge or consent of the other members.

25.     Yet, upon information and belief, Michelle is now staging and marketing the Unit for sale—without notice to Plaintiffs, without their consent, and without any authority—while simultaneously diverting the LLC's rental income into bank accounts she alone controls, and withholding all financial information from Plaintiffs.

3

26. Michelle's evident objective is to liquidate Plaintiffs' asset and use the proceeds for her own personal financial gain.

27. Michelle's conduct is not isolated, but rather part of a broader pattern of behavior of taking adverse action against her parents in connection with other gifts from her parents conveyed throughout her lifetime.

28. Indeed, the Assignment is only one example of many monetary, real property, and other gifts that Plaintiffs have conveyed to each of their children over the course of their lifetimes.

29. Even so, Michelle is also engaged in a separate litigation campaign against Plaintiffs in New York State Supreme Court which seeks, *inter alia*, to challenge the business judgment of a corporation in which Michelle was gifted a minority interest.

30. Upon information and belief, Michelle's motivation for selling the Unit in secret is to use the proceeds from such sale to fund her ongoing litigation against Plaintiffs.

31. Upon realizing that Michelle's apparent objective is to quietly sell the Unit without their consent or authorization, Plaintiffs have attempted to uncover more information about Michelle's involvement with the same.

32. Upon information and belief, and coinciding with the deterioration of her relationship with her parents, Michelle has unilaterally arrogated to herself the powers of a member and manager.

33. Michelle has held herself out as the so-called "Managing Member" of the LLC to The Sheffield, seized control of the LLC's bank accounts and capital accounts, diverted the entirety of any rental income from the LLC to herself, usurped authority for all accounting and taxes of the LLC, and cut her parents, Plaintiffs, off from any information concerning the LLC.

34. Plaintiffs accordingly bring this action to, *inter alia*: affirm that Plaintiffs are the only members of the LLC and establish that Michelle is only the assignee of a beneficial economic

interest without membership, voting, or managerial rights to sell or otherwise dispose of the Unit; halt the threatened sale and preserve the Unit, including through the appointment of a receiver during the pendency of this action; compel an accounting and the production of the LLC's books and records; and recover any income and funds that Michelle has wrongfully diverted.

**PARTIES**

35.    Plaintiff Arthur Haruvi is an individual who resides at 240 Riverside Boulevard, Apartment 23B, New York, New York 10069. Arthur is a citizen of the State of New York. Arthur is, and at all relevant times has been, a member of 51D Realty LLC.

36.    Plaintiff Esther Haruvi is an individual who resides at 240 Riverside Boulevard, Apartment 23B, New York, New York 10069. Esther is a citizen of the State of New York. Esther is, and at all relevant times has been, a member of 51D Realty LLC.

37.    Defendant Michelle Haruvi is an individual who resides at 72 Allston Way, San Francisco, California 94127. Michelle is a citizen of the State of California.

38.    Nominal Defendant 51D Realty LLC is a New York limited liability company with a principal place of business at 240 Riverside Boulevard, Apartment 23B, New York, New York 10069.

39.    The LLC is named solely as a nominal defendant because it is the entity that holds legal title to the Unit (as defined herein) and is a necessary party under Federal Rule of Civil Procedure ("FRCP") 19(a).

40.    The LLC has no independent adversarial interest in this dispute, which is between the individual members of the LLC and Michelle regarding its ownership, membership, internal governance, and the disposition of its sole real property asset.

41.    As a nominal defendant, the LLC's citizenship is not considered for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

42.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

43.　　Plaintiffs Arthur Haruvi and Esther Haruvi are citizens of New York. Defendant Michelle Haruvi is a citizen of California.

44.　　The amount in controversy is satisfied by, *inter alia*, the value of the Unit (approximately $3 million), the value of the disputed membership and economic interests in the LLC, and the accumulated rental income at issue.

45.　　This Court has personal jurisdiction over Defendant Michelle Haruvi because the claims arise out of a dispute over the true membership in and management of a New York limited liability company that owns real property in New York County.

46.　　Further, Michelle has purposefully availed herself of the laws of the State of New York by holding herself out as the Managing Member of a New York LLC, improperly directing the management of a New York condominium unit, and filing New York tax returns.

47.　　Further, upon information and belief, Michelle is now actively marketing a New York condominium unit for sale in New York.

48.　　Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the formation and operation of the LLC, the execution of the disputed assignment, the management and leasing of the Unit, and the attempted sale of the Unit.

## FACTUAL BACKGROUND

**A.　　Formation of the LLC and Acquisition of the Unit**

49.　　On or about July 3, 2012, Plaintiffs caused the LLC to be formed under the laws of the State of New York for the purpose of acquiring and holding a residential condominium unit,

322 West 57th Street, Apt 51D, New York, New York, 10019, designated on the tax map of the City of New York as Block 1047, Lot 2514, in a luxury building known as "The Sheffield".

50.    The Articles of Organization of the LLC ("Articles of Organization") were filed with the New York State, Department of State, Division of Corporations on July 3, 2012, as File Number 120703000622.

51.    The LLC is a New York limited liability company governed by its Articles of Organization and the LLCL.

52.    Since its inception, Plaintiffs are, and at all times have been, members of the LLC.

53.    Pursuant to the Articles of Organization, the LLC is to be managed by one or more members.

54.    The LLC is therefore member-managed.

55.    The Articles do not provide for a "managing member," or any separate managerial office.

56.    Plaintiffs hold equal managerial authority under the Articles of Organization.

57.    Upon information and belief, an operating agreement does not exist for the LLC.

58.    In the absence of a written operating agreement, the LLCL's default provisions control.

59.    On July 18, 2012, the LLC was granted title to the Unit in fee simple absolute by UT Borrower LLC as evidenced by that certain Residential Unit Deed recorded with the New York City Register on July 31, 2012, as CRFN 2012000301938.

60.    The purchase price was approximately $2,596,538.

61.    Arthur Haruvi appeared and executed the deed on behalf of the LLC as grantee.

62.    This action directly affects the title to, and the possession, use, and enjoyment of, the Unit as real property.

7

63. Among other relief, and as set forth more fully below, Plaintiffs seek, *inter alia*: (a) a declaratory judgment as to their membership interests in the LLC and exclusive authority to manage the LLC and the Unit; (b) a declaratory judgment that Michelle, as the assignee of an economic interest only, cannot effectuate a sale, transfer, conveyance, encumbrance, or other disposition of the Unit; and (c) the imposition of a constructive trust upon the Unit and any proceeds of its sale.

64. A judgment in Plaintiffs' favor would determine the right to sell, convey, encumber, possess, and dispose of the Unit, and would thereby directly affect the title to, and the possession, use, and enjoyment of, the Unit.

**B.     The Assignment of Economic Interest**

65. On November 16, 2012, Arthur executed a one-page document titled "Assignment of Limited Liability Company Interests in 51D Realty LLC" which assigned 99% of the beneficial economic interest in the LLC to Michelle as a gift.

66. Plaintiffs retained 1% of the economic interest in the LLC.

67. The membership of the LLC was intentionally unchanged by the Assignment.

68. Under LLCL § 603(a)(2), "an assignment of a membership interest does not dissolve a limited liability company or entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights or powers of a member".

69. Under LLCL § 603(a)(3), "the only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled".

70.     Thus, the assignment of a membership interest conveys only the right to receive a certain portion of distributions when made; it does not entitle the assignee to participate in management or to exercise any of the rights or powers of a member.

71.     Under LLCL § 604(a), "an assignee of a membership interest may not become a member without the vote or written consent of at least a majority in interest of the members, other than the member who assigned or proposes to assign such membership interest".

72.     Because the LLC has no operating agreement, these default rules govern without exception.

73.     Esther never consented—not by vote, not in writing, and not in any other manner—to Michelle's admission as a member of the LLC.

74.     No meeting was held to admit Michelle as a member; no written consent was executed; and Michelle was never admitted as a member of the LLC.

75.     As a matter of law, the Assignment did not, and could not, make Michelle a member of the LLC.

76.     As a matter of law, the Assignment did not, and could not, confer upon Michelle any of the rights associated with membership, such as the right to participate in the management of the LLC or any power to act for or on behalf of the LLC including with respect to the Unit.

**C.      Michelle's Motivation for Selling the Unit in Secret is To Sustain Her Scorched Earth Litigation Campaign Against Her Parents**

77.     In or around 2021, relations between Plaintiffs and Michelle deteriorated as a result of Michelle's conduct involving other family matters.

78.     Despite having received, upon information and belief, the vast majority of her individual net worth and assets from Plaintiffs, Michelle began to pursue a coordinated campaign to claim a greater portion of Plaintiffs' estate, including their portfolio of multifamily residential buildings in New York City (the "Haruvi Portfolio") for her own personal financial gain.

79.    To do so, she engaged sophisticated legal counsel at K&L Gates LLP to pursue multiple state court actions against Plaintiffs and certain of the constituent entities in the Haruvi Portfolio.

80.    In *Michelle Haruvi v. Peter Hungerford, et al.*, Index No. 651033/2023 (Sup. Ct., N.Y. Cnty., Commercial Division) (the "Simry Action"), Michelle sued Arthur, among others, seeking to unwind certain restructuring of the Haruvi Portfolio's real estate holdings for her own personal financial gain.

81.    The pattern across these proceedings is consistent: Michelle pursues her own financial gain even when it comes at the expense of Plaintiffs.

82.    The encumbrances and expense that accompany her conduct are used as instruments of pressure against her parents and their business affairs.

83.    Plaintiffs do not ask this Court to adjudicate the Simry Action or to resolve the disputes pending in the state court. It is described only to situate the conduct at issue here in its proper context: Michelle's attempt to sell the Unit out from under her parents is not an isolated commercial disagreement, but part of a broader effort to weaponize the family's assets for her own personal financial gain and to the detriment of her parents, from whom she is now estranged.

84.    Upon information and belief, the motivation for Michelle's efforts to liquidate the Unit in secret and conceal such activity from Plaintiffs is so that she can use the proceeds from such a sale to finance and sustain her scorched earth litigation campaign against Plaintiffs.

85.    That context underscores the urgency and necessity of judicial determination on the causes of action set forth herein.

D.    **Michelle's Improper Seizure of the LLC's Banking and Management**

86.    Upon information and belief, in or around August 2021, Michelle transferred the LLC's bank and capital accounts into accounts under her sole control and began to redirect the

Unit's rent, the receipt of all tax documents, and all management and any rental correspondence to herself in San Francisco.

87.     Upon information and belief, the LLC's deposit accounts at JPMorgan Chase (a checking account and a linked savings account) were thereafter titled "51D Realty LLC c/o Michelle Haruvi, 72 Allston Way, San Francisco, California," and were opened with zero balances in late October 2021, confirming that Michelle moved the LLC's bank accounts to her own control at that time.

88.     Upon information and belief, when The Sheffield's managing agent advised Michelle in September 2021 that the LLC's records identified the owners as "Esther, Arthur and Aileen," Michelle nonetheless asserted that she was the "majority owner" and "99% owner" and submitted the Assignment as her proof of her supposed authority.

89.     Upon information and belief, Michelle has continued to exercise complete dominion over the LLC's bank accounts, funds, taxes, and any rental income, without providing any notice or information to Plaintiffs whatsoever.

90.     Michelle's cessation of all financial reporting to Plaintiffs coincided with her seizure of the LLC's accounts and income and has deprived Plaintiffs of their right and authority to manage the LLC and the Unit, direct any distributions, and possess the information necessary to understand the LLC's finances, including, *inter alia*, their own tax position and any associated liabilities.

91.     The financial information concerning the LLC and the Unit is presently within Michelle's exclusive knowledge and cannot be determined without an accounting and review of the LLC's books and records.

11

**E.    Michelle's Concealment of Rental Proceeds and Other Financial Activity**

92.    From at least 2013 through at least June 2023, the Unit was rented to residential tenants and generated substantial rental income.

93.    For each lease between 2013 and 2023, the landlord was named as 51D Realty, LLC c/o Esther Haruvi.

94.    The known lease history is as follows:

(a)    from approximately August 2013 through August 2015, the Unit was leased to Joshua Eisen at $9,200 per month;

(b)    from approximately September 2015 through mid-2016, the Unit was leased to Christine Osekoski at $9,500 per month; and

(c)    upon information and belief, from approximately mid-2016 through June 2023, the Unit was leased to Cynthia Selfridge at $9,300 per month ($111,600 per year).

95.    Plaintiffs have no direct knowledge and are uncertain as to whether the Unit is presently rented, but, upon information and belief, believe that it is, despite Michelle's failure to inform Plaintiffs of any current tenant or any rental income from the Unit.

96.    Upon information and belief, the Unit is being rented for at least, but likely more, than the last known monthly rental income of $9,300, which would mean that the Unit is generating rental proceeds in excess of $100,000 each year.

97.    Michelle has not advised Plaintiffs as to whether the Unit is currently rented or has been at any point in time after the last known lease ended in June 2023, approximately three years ago.

98.    Michelle has not provided Plaintiffs with any documents or information concerning a current tenant or any current rental income.

12

99.     Upon information and belief, Michelle has been personally collecting and diverting such rental income from the Unit for her own personal gain without following the proper process for distributions and in violation of the LLCL and New York law.

100.    Michelle has failed to apportion any rental income to Plaintiffs in violation of, *inter alia*, LLCL §§ 503 and 504.

101.    Michelle has never provided any accounting to Plaintiffs regarding the disposition of the LLC's rental income, the status of the LLC's bank or capital accounts, or a record of any distributions made from the LLC.

F.      **Michelle's Concealment During Sworn Testimony**

102.    On February 26, 2026, Michelle was deposed in the Simry Action. Plaintiffs' counsel, Holland & Knight LLP, conducted portions of that examination.

103.    During her deposition, Michelle was asked: "During the time period relevant to this lawsuit, so as previously stated that is January 1, 2021 through the present, have you received any other income from any source?"

104.    Michelle responded: "No, I don't believe so."

105.    When pressed, she identified only a Charles Schwab investment brokerage account and a money market account as sources of income.

106.    She did not disclose any income from the LLC or the Unit.

107.    Michelle was further asked: "Aside from the accounts that you have identified, the Charles Schwab investment brokerage account and the money market account, have you received any income from any other source between January 1, 2021 to the present?"

108.    Michelle responded: "Not that I can recall."

109.    This testimony is irreconcilable with the fact that Michelle claims to be the 99% owner and Managing Member of an LLC that generated more than $100,000 per year in rental

13

income through at least June 2023 and, upon information and belief, through and including the present. Michelle concealed this income stream during sworn testimony.

110.    When asked to identify the entities in which she maintains ownership interests within the Haruvi family portfolio, Michelle identified only "Simry Realty Corp. and Jade Realty."

111.    She did not mention the LLC despite claiming to be its 99% owner and "Managing Member".

112.    When asked "Do you own or rent any other residential properties?"

113.    Michelle identified "322 West 57th Street, Apartment 51D" but provided no details regarding the LLC ownership structure, rental history, or income associated with her purported ownership.

114.    Michelle's sworn statement under oath demonstrates her attempt to claim title to the Unit but also evidences that even she is aware that she is not validly a member of the LLC.

G.    **Michelle's Attempted Unauthorized Sale of the Unit**

115.    On or about June 8, 2026, Aileen Haruvi, Plaintiffs' other daughter ("Aileen"), received a notification from The Sheffield building management regarding the Unit, which stated that the Unit was coming to market and referenced a "Private Preview Before Public Listing" (the "Building Notification").

116.    Aileen alerted Plaintiffs to the Building Notification.

117.    Upon information and belief, the Building Notification indicates that Michelle is actively marketing the Unit for sale.

118.    Upon information and belief, Michelle has also already engaged an interior design studio, DreamRose Design, to stage the Unit for showings to potential buyers.

119.    Upon information and belief, DreamRose Design made a public post on social media through Instagram concerning the staging of the Unit.

120. Upon information and belief, Michelle subsequently demanded the post be taken down so as to avoid any possibility of alerting Plaintiffs to the fact that she is pursuing a sale of the Unit without their knowledge, consent, or authorization.

121. Michelle did not notify Plaintiffs of her intention to list or sell the Unit.

122. Michelle did not seek or obtain the consent of Plaintiffs to list or sell the Unit.

123. Michelle did not provide Plaintiffs with any information regarding the proposed terms of sale, the listing price, or the disposition of anticipated sale proceeds.

124. Michelle did not include Plaintiffs on any correspondence or communications with The Sheffield concerning the listing of the Unit or her intention to sell the Unit.

125. Michelle lacks any membership and managerial authority to act on behalf of the LLC and sell or otherwise dispose of the Unit.

126. Michelle has violated, *inter alia*, the LLCL in taking material steps to advance a sale of the Unit without Plaintiffs' knowledge, consent, or authorization.

127. The sale of the LLC's sole asset constitutes an extraordinary transaction that requires the consent of the members under the LLCL and New York law.

128. Upon information and belief, Michelle intends to sell the Unit for approximately $3 million and to retain all proceeds for her own personal use, including to fund her ongoing litigation against Plaintiffs in the Simry Action and related proceedings.

**H.    Any Improper Sale Will Violate the Condominium's By-Laws**

129. The Sheffield's Amended and Restated By-Laws (the "By-Laws"), Article 8, Section 8.1, require that any Residential Unit Owner who receives a bona fide offer to purchase a unit must give notice by certified or registered mail to the Residential Board of the receipt of such offer, including the name and address of the proposed purchaser, the terms of the proposed transaction, and such other information as the Board may require.

15

130.    The Residential Board then has the right of first refusal to purchase the unit on the same terms.

131.    As the true Residential Unit Owners, Plaintiffs have not even been made aware that Michelle is pursuing a sale of the Unit.

132.    Michelle is not a Residential Unit Owner and lacks any authority to act on their behalf.

133.    Any purported sale consummated in violation of Section 8.1 is "voidable at the election of the Residential Board" under Section 8.9 of the By-Laws.

134.    On information and belief, Michelle has not complied—and cannot comply—with the By-Laws because she lacks the authorization of the LLC and Plaintiffs to initiate a sale.

## CAUSES OF ACTION

Plaintiffs assert the following causes of action against Michelle. Certain of the following causes of action are pleaded in the alternative pursuant to FRCP 8(d). To the extent any cause of action, claim, or allegation is or may be inconsistent with any other, it is pleaded in the alternative, and the assertion of any one cause of action, claim, or allegation shall not constitute an admission against, or a waiver or election with respect to, any other cause of action, claim, allegation, or the relief sought therein. Plaintiffs further reserve the right to recover under any one or more of the causes of action pleaded herein.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment Pursuant to FRCP 57 and CPLR 3001)**

135.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth and repeated herein.

136.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Michelle to warrant the issuance of declaratory relief under FRCP 57 and New York Civil Practice Law and Rules ("CPLR") 3001.

16

137.    The parties hold adverse and irreconcilable legal positions concerning the ownership, membership, and control of the LLC and the legal effect of the Assignment.

138.    Plaintiffs contend that the Assignment conferred upon Michelle no more than a bare economic assignee's interest, and that Plaintiffs are, and remain, the only members of the LLC.

139.    This controversy is not hypothetical nor contingent, but rather actual, concrete, live, and presently existing, and it is ripe for judicial adjudication and determination.

140.    Michelle is actively staging and marketing the Unit for an imminent sale in reliance on the very membership and authority that Plaintiffs dispute.

141.    The harm Plaintiffs face is accordingly actual and immediate rather than remote or speculative, and the controversy turns on a discrete and presently determinable question of law: the effect of an assignment of interest under the LLCL, which requires no further factual development.

142.    A declaration will serve a critical and necessary purpose in clarifying and settling the membership and governance of the LLC and the Unit, and will afford Plaintiffs relief from the uncertainty and potential irreparable harm giving rise to this action.

143.    A declaration and judicial determination is necessary to determine before any sale is consummated that Michelle has no authority, unilateral or otherwise, to sell or otherwise dispose of the Unit as the LLC's sole real property asset.

144.    A declaratory judgment in Plaintiffs' favor is necessary to determine the control, management, and right to sell, convey, encumber, or otherwise dispose of the Unit.

145.    A judgment in Plaintiffs' favor would thereby directly affect the title to, and the possession, use, and enjoyment of, the Unit as real property.

146.    Absent a declaration, Plaintiffs will be left without an adequate remedy at law, and will be exposed to the irreparable loss of their interests in the LLC and the Unit.

147. The requested declaratory relief is thus both necessary and appropriate, and the entry of a declaratory judgment is warranted.

148. Because the LLC has never adopted an operating agreement, its internal affairs are governed exclusively by its Articles of Organization and the default provisions of the LLCL, and each provision of the LLCL that applies "except as provided in the operating agreement" governs the LLC in full and without modification.

149. The general rule for admission of a member of a limited liability company is set forth in LLCL § 402(c)(1), which provides that, except as provided in an operating agreement, the vote of a majority in interest of the members entitled to vote thereon shall be required to admit a person as a member and issue such person a membership interest in a limited liability company.

150. Such a vote or admission was intentionally never sought, held, or obtained, and Michelle was never admitted as a member of the LLC.

151. Pursuant to LLCL § 603(a)(2), an assignment of an interest in a limited liability company does not entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights or powers of a member.

152. Pursuant to LLCL § 603(a)(3), the only effect of an assignment of interest in a limited liability company is to entitle the assignee to receive, to the extent assigned, a beneficial economic interest in any distributions and allocations of profits and losses to which the assignor would otherwise be entitled.

153. If the assignee of an economic interest wishes to become a member of the limited liability company, a formal vote and consent of a majority in interest of the existing members of the limited liability company other than the assignor is required pursuant to LLCL § 604(a).

18

154.    Plaintiffs are the only members of the LLC, and no vote nor any other process was ever conducted for the admission of Michelle as a member of the LLC, at the time the Assignment was made, or subsequently.

155.    The decision not to confer membership or managerial status upon Michelle was intentional.

156.    Plaintiffs have, at all times, desired to retain control and authority over the LLC and the Unit.

157.    By operation of LLCL § 603(a), any such assignment conveyed to Michelle no membership, no ownership of a membership interest, no voting rights, no right to participate in the management or affairs of the LLC, and no power to act for or to bind the LLC.

158.    Even if, *arguendo*, Arthur had intended to assign membership status to Michelle (which he did not), he could not have conveyed such membership as the assignor of the Assignment under LLCL § 604(a).

159.    Esther's vote and consent would have been required for the express purpose of admitting Michelle as a member beyond the assignment of any economic interest.

160.    No meeting of the members was ever held for that purpose, no such vote ever took place, and no written or formal consent to Michelle's admission as a member was given.

161.    Accordingly, even given its maximum possible legal effect, the Assignment could transfer to Michelle no more than a bare economic assignee's right, under LLCL § 603(a)(3), to receive distributions and allocations of profits and losses, when made, to the extent of the interest assigned.

162.    The Assignment intentionally did not, and could not, transfer or assign any membership status to Michelle, nor could it convey any voting rights or the right to participate in any of the management, control, and operation of the LLC.

163.    Because Michelle is not a member and holds no voting or management rights, she has no authority under the Articles of Organization, the LLCL, or applicable New York law to manage the LLC, act on its behalf, or sell, transfer, convey, encumber, or otherwise dispose of the Unit, the LLC's sole asset.

164.    Any action Michelle has taken, or purports to take, on behalf of the LLC or the Unit, including any sale, transfer, conveyance, encumbrance or other disposition of the Unit is accordingly void for want of authority.

165.    Plaintiffs are accordingly entitled to a judgment pursuant to FRCP 57 and CPLR 3001 declaring that:

(a) the Assignment conferred upon Michelle no membership, ownership, voting, or managerial interest in the LLC, and Michelle is not a member or owner of the LLC in any capacity and possesses none of the rights, powers, or authority of a member;

(b) the Assignment conveyed to Michelle, at most, a bare economic assignee's right to receive distributions and allocations of profits and losses, when made, corresponding to the amount of the assigned economic interest;

(c) Esther is, and has been since the LLC's formation, a member of the LLC, and holds a residual economic interest of no less than 0.5% following the Assignment;

(d) Arthur is, and has been since the LLC's formation, a member of the LLC, and holds a residual economic interest of no less than 0.5% following the Assignment;

(e) Plaintiffs are the only members of the LLC and therefore possess all voting and management rights concerning the LLC and the Unit; and

(f) Michelle lacks any authority under the Articles of Organization, the LLCL, or applicable New York law to manage or control the LLC or the Unit.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment Pursuant to FRCP 57 and CPLR 3001)**

166.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth and repeated herein.

167.    An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Michelle concerning Michelle's authority, or lack thereof, to sell, convey, transfer, mortgage, encumber, or otherwise dispose of the Unit or any interest therein.

168.    Upon information and belief, Michelle claims the unilateral right, as purported "Managing Member" and ninety-nine-percent owner of the LLC, to sell the Unit; Plaintiffs maintain that Michelle possesses no such authority under the Articles of Organization, the LLCL, or applicable New York law.

169.    Upon information and belief, Michelle is presently and actively marketing the Unit for sale—soliciting a "Private Preview Before Public Listing," engaging a broker, and staging the Unit for showings to prospective purchasers, and a sale is imminent.

170.    That controversy is neither hypothetical nor contingent.

171.    The controversy is therefore ripe for judicial resolution, turning on a discrete and presently determinable question of law that requires no further factual development.

172.    A judgment in Plaintiffs' favor would determine the right to sell, convey, encumber, possess, and dispose of the Unit, and would thereby directly affect the title to, and the possession, use, and enjoyment of, the Unit as real property.

173.    This cause of action is pleaded as a principal claim and does not depend upon the resolution of the individual membership status of the LLC. Whatever those interests are ultimately determined to be, Michelle lacks the unilateral authority to sell or encumber the Unit as a matter of law.

174.    The Unit is the sole asset of the LLC.

21

175.   Its sale, conveyance, or encumbrance would constitute a transfer of all, or substantially all, of the assets of the LLC.

176.   Because the LLC has never adopted an operating agreement, its internal affairs are governed exclusively by its Articles of Organization and the default provisions of the LLCL.

177.   The Articles provide that the LLC "is to be managed by 1 or more members."

178.   The LLC is therefore a member-managed limited liability company, in which management is vested in the members, and there is no manager, "Managing Member," or other managerial office vested with authority to act unilaterally on the LLC's behalf.

179.   Under LLCL § 402(d)(2), except as provided in an operating agreement, "the vote of at least a majority in interest of the members entitled to vote thereon shall be required" to "approve the sale, exchange, lease, mortgage, pledge or other transfer of all or substantially all of the assets of the limited liability company."

180.   Because the LLC has no operating agreement, this statutory process and requirement strictly governs without modification or exception.

181.   No vote or written consent of a majority in interest of the members authorizing the sale, transfer, or encumbrance of the Unit has ever been sought, taken, or obtained.

182.   No meeting of the members has been called or held for that purpose.

183.   Plaintiffs, who together hold a majority in interest of the LLC, have not consented to and hereby affirmatively withhold their consent to any sale, transfer, or encumbrance of the Unit.

184.   Michelle's asserted authority to sell the Unit fails under every construction of the parties' interests, and the statutory bar of LLCL § 402(d)(2) is dispositive in each of the following instances.

185. If the Assignment is given its maximum possible effect, it conferred upon Michelle no more than a bare economic assignee's right to distributions and the allocations of profits and losses, when made, under LLCL § 603(a).

186. That expressly does not include any right "to participate in the management and affairs of the limited liability company or to … exercise any rights or powers of a member" pursuant to the LLCL.

187. An economic interest assignee, never having been admitted as a member under LLCL § 604(a), does not possess any voting or management authority and is without any power to bind the LLC or to sell or convey its sole asset.

188. Even if, in the alternative, Michelle was deemed a member of the LLC, she would be but one member of a member-managed limited liability company who cannot act unilaterally without the knowledge, consent, or authorization of Plaintiffs as the other two members.

189. Even if, in the alternative, Michelle was deemed a member of the LLC, the sale of the LLC's sole asset would still require the affirmative vote of a majority in interest of the members under LLCL § 402(d)(2).

190. Such a vote has not been, and will not be, obtained, as Plaintiffs hold a majority in interest, were never informed or made aware of Michelle's intent to sell the Unit, and hereby withhold their authorization or consent.

191. Michelle's want of authority is confirmed by the governing condominium documents.

192. The By-Laws of The Sheffield require a unit owner intending to sell to give notice to the Residential Board and to afford the Board a right of first refusal, and provide that any sale consummated in violation of those provisions is voidable at the Board's election.

23

193.    Michelle cannot satisfy those requirements, because she lacks authority to cause the LLC, as the record owner of the Unit, to sell it in the first instance.

194.    A judicial declaration is necessary and appropriate to resolve this controversy before an unauthorized sale is consummated and title is improperly conveyed to a third party.

195.    The Unit is unique real property, and its sale and conveyance to a third party would cause irreparable harm that cannot be adequately remedied by money damages.

196.    Absent a declaration, Plaintiffs will be left without an adequate remedy at law and will be exposed to the irreparable loss of the LLC's sole asset and of Plaintiffs' interests therein.

197.    A declaration will serve the useful purpose of definitively settling the parties' legal relations concerning the disposition of the Unit and will clarify, in advance of any sale, that Michelle is without authority to sell, encumber, or otherwise dispose of it.

198.    Plaintiffs are accordingly entitled to a judgment, pursuant to FRCP 57 and CPLR 3001, declaring that:

(a) the Unit is the sole asset of the LLC, and any sale, transfer, conveyance, mortgage, or encumbrance of the Unit constitutes a transfer of all or substantially all of the assets of the LLC within the meaning of LLCL § 402(d)(2);

(b) Michelle lacks any authority, under the Articles of Organization, the LLCL, or applicable New York law, to sell, transfer, convey, mortgage, encumber, list for sale, or otherwise dispose of the Unit or any interest therein, whether unilaterally or otherwise;

(c) no sale, transfer, conveyance, mortgage, or encumbrance of the Unit may be effected without the affirmative vote or written consent of a majority in interest of the members of the LLC, which has not been sought or given; and

(d) any sale, transfer, conveyance, mortgage, or encumbrance of the Unit purported to be effected by Michelle in the absence of such authorization is void and of no legal force or effect.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Appointment of a Receiver Pursuant to FRCP 66; CPLR § 6401; and Equity)**

199.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth and repeated herein.

200.    This Court possesses the equitable power to appoint a receiver to take custody of and preserve property that is the subject of an action where there is a danger that the property will be removed from the jurisdiction, lost, materially injured, or dissipated.

201.    Under FRCP 66, and consistent with CPLR § 6401, the appointment of a temporary receiver is warranted where a party with an apparent interest in identified property demonstrates a risk of irreparable loss to that property pending the litigation.

202.    A receiver is necessary here to preserve the Unit, the LLC's bank accounts and income, and the LLC's books and records pending the resolution of this action.

203.    The Unit is unique real property, and its sale and conveyance to a third party would cause irreparable harm that cannot be adequately remedied by money damages.

204.    The LLC is a single-asset company whose only property, the Unit, is being actively marketed for sale by a person who lacks authority to sell it. If the Unit is conveyed to a third party, or if its anticipated proceeds are commingled or dissipated, the very subject matter of this action will be lost.

205.    The danger of loss and dissipation is neither speculative nor remote; it is demonstrated by Michelle's own conduct.

206.    Michelle has taken the LLC's bank accounts under her exclusive control; upon information and belief, has diverted the LLC's rental income to accounts in her own name in

California; has made distributions to herself while making none to Plaintiffs; has not, since 2021, provided Plaintiffs with any financial information or tax documents concerning the LLC; and is presently attempting to sell the LLC's sole asset, upon information and belief, to fund her collateral objectives and continued scorched earth litigation campaign against Plaintiffs.

207.    This conduct establishes a concrete risk that, absent a receiver, the Unit and its proceeds will be placed beyond the reach of this Court and the LLC's rightful members.

208.    Further, the need to preserve the LLC's sole asset is heightened by the Unit's escalating carrying costs.

209.    Upon information and belief, by notice dated December 12, 2025, The Sheffield's Board of Managers imposed an increase in common charges of 8.17% for 2026, together with a temporary capital assessment equal to 15% of 2026 common charges for each of the next five years (an aggregate increase exceeding 24%) to fund approximately $5.6 million in building capital expenditures.

210.    With Michelle in sole control of the LLC's accounts and refusing to account, there is no assurance that the LLC's income is being applied to these obligations rather than diverted, placing the Unit at risk and creating potential financial liability to Plaintiffs.

211.    No lesser remedy will adequately protect Plaintiffs, the LLC, and the Unit.

212.    Michelle has excluded Plaintiffs from the LLC's management and finances, has disregarded the members' rights under the LLCL, and cannot be relied upon to preserve the LLC's assets pending judgment.

213.    The LLC itself, being under Michelle's sole de facto control, cannot protect its own interests.

214.    The appointment of a neutral receiver during the pendency of this action is therefore essential to collect and safeguard the LLC's assets and any rental or other income, to prevent any

26

unauthorized sale or encumbrance of the Unit, and to secure the LLC's books and records for the accounting to which Plaintiffs are entitled.

215.    The equities strongly favor the appointment of a receiver.

216.    A receiver would preserve the LLC's sole asset and its income for the benefit of whichever members are ultimately determined to be entitled to them, at minimal prejudice to any party acting in good faith, while the absence of a receiver threatens irreparable and irremediable harm.

217.    Plaintiffs stand ready to address the posting of any bond the Court may require.

218.    Plaintiffs are therefore entitled to an order appointing a temporary receiver during the pendency of this action, with authority to take possession and control of the Unit and the LLC's bank accounts, books, and records; to collect, hold, and preserve the LLC's rental income and other funds; to pay the LLC's necessary and ordinary carrying costs, including common charges, real property taxes, and insurance, so as to preserve the Unit pending judgment; to prevent any sale, transfer, encumbrance, or further dissipation of the LLC's assets; and to account to the Court, with such further powers and subject to such terms as the Court deems just and proper, through the pendency of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Declaration of No Managerial Authority and, In the Alternative, Removal Pursuant to LLCL §§ 401 and 414)**

219.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

220.    An actual, substantial, and justiciable controversy exists between Plaintiffs and Michelle concerning Michelle's asserted status and authority as "Managing Member" of the LLC.

221.    Michelle claims to be the "Managing Member," with authority to manage the LLC and to act unilaterally on its behalf, including to sell its sole asset; Plaintiffs maintain that no such

27

office or authority exists or was ever conferred, and that Michelle has no managerial authority of any kind.

222.    The LLC's Articles of Organization provide that the LLC "is to be managed by 1 or more members."

223.    The LLC is therefore a member-managed limited liability company. Under LLCL § 401(a), because the Articles do not provide for management by one or more managers, management of the LLC is vested in its members.

224.    The LLC has never adopted an operating agreement, and there is no "Managing Member" of the LLC.

225.    Michelle's assumption of the title "Managing Member," and her exercise of unilateral managerial authority over the LLC, are therefore without any legal or factual foundation and are void.

226.    As alleged above and as established in the First Cause of Action, Michelle is not a member of the LLC, and in no event does the LLC have a "Managing Member" vested with the powers Michelle purports to exercise.

227.    Plaintiffs are entitled to a judgment declaring that the office and title of "Managing Member" do not exist in the LLC; that Michelle's assumption of that title and her purported managerial authority are void and of no legal force or effect; and that Michelle has no authority to manage the LLC or to act on its behalf in any capacity.

228.    In the alternative, and only to the extent the Court determines that Michelle holds or has exercised any managerial role in the LLC, Plaintiffs seek Michelle's removal from that role pursuant to LLCL § 414. This alternative claim is pleaded pursuant to FRCP 8(d), and the assertion of it shall not constitute an admission against, or a waiver or election with respect to, Plaintiffs' principal position that no managerial office exists and that Michelle holds no managerial authority.

229.    Pursuant to LLCL § 414, except as provided in an operating agreement, a manager may be removed or replaced with or without cause by a vote of a majority in interest of the members entitled to vote thereon.

230.    The LLC has no operating agreement, and this default rule governs without exception or modification.

231.    Plaintiffs hold a majority in interest of the LLC and are entitled to vote to remove Michelle from any managerial role she is found to hold, and Plaintiffs hereby affirm her removal.

232.    Ample cause for removal exists in any event, including, without limitation, Michelle's attempt to sell the LLC's sole asset without authority and without notice to or consent of the other members; her seizure of the LLC's bank accounts and diversion of the LLC's funds and rental income to accounts under her sole control; her improper control over distributions and related failure to make any applicable distributions or allocations to Plaintiffs; her refusal to provide any accounting or financial information; and her concealment of the LLC's operation and affairs.

233.    Plaintiffs are accordingly entitled, in the alternative, to a judgment confirming Michelle's removal from any managerial role in the LLC pursuant to LLCL § 414.

234.    Whether under the principal declaration or the alternative removal, Plaintiffs are further entitled to a judgment that Michelle may not lawfully hold herself out as the "Managing Member" of the LLC and may not take any action, or purport to exercise any authority, on behalf of the LLC.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Inspection of Books and Records Pursuant to LLCL § 1102)**

235.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

236.    Plaintiffs are, and at all relevant times have been, the only members of the LLC.

237.    Pursuant to, *inter alia*, LLCL § 1102(a), Plaintiffs, as members, are entitled to review the LLC's tax returns for the most recent fiscal years, over which Michelle has improperly exercised dominion and control.

238.    Pursuant to LLCL § 1102(b), and independently under the common law of New York, a member of a limited liability company has the right, upon reasonable request and for any purpose reasonably related to the member's interest as a member, to inspect and copy the LLC's books and records, including all financial records.

239.    Plaintiffs seek to inspect and copy the LLC's books and records for purposes plainly and reasonably related to their interests as members, including: to ascertain the LLC's financial condition; to determine the receipt and disposition of the LLC's rental income and other funds; to determine what distributions have been made and to whom; to ascertain the current status and history of each member's capital account, including whether the capital accounts of Plaintiffs have been altered, reduced, or closed; to evaluate the transactions in and out of the LLC's bank accounts, including, upon information and belief, transfers Michelle has made to personal, outside accounts; and to protect their interests in the LLC and its sole asset in the face of Michelle's attempt to sell the Unit.

240.    The propriety of Plaintiffs' purpose is manifest. Plaintiffs have received no tax documents or returns, financial statements, or other financial information concerning the LLC since Michelle apparently usurped control of the LLC and the Unit.

241.    During that period, Michelle has, upon information and belief, taken the LLC's bank accounts under her sole control, diverted the LLC's rental income to herself by improperly and unilaterally making distributions to only herself without following the proper corporate process, and is now attempting to sell the LLC's only asset.

242.     Plaintiffs are indisputably entitled to know the status and history of the LLC's financial condition, income, and sole real property asset.

243.     Plaintiffs' demand is reasonable, is made in good faith, and is made for purposes reasonably related to their membership.

244.     There is no proper basis on which to deny Plaintiffs, as members, access to the records of the very company in which they hold, collectively, the entire membership interest.

245.     Plaintiffs have no adequate remedy at law and are entitled to an order directing and compelling Michelle and the LLC to produce, for Plaintiffs' inspection and copying, all of the LLC's books and records, including, without limitation: all federal, state, and local tax returns and all other tax documents (to the extent any were prepared or filed) for the most recent fiscal years; all bank statements, canceled checks, wire and transfer records, and other records of the LLC's bank and financial accounts; all other books of account, general ledgers, and financial statements of the LLC or the Unit; all capital-account schedules and records reflecting the status and history of each member's capital account; all records of distributions and withdrawals; all leases, rent records, and records of rental income and expenses, including common charges and any insurance, relating to the Unit; and all records and communications relating to any listing, staging, marketing, offer, or proposed sale of the Unit.

246.     Plaintiffs are further entitled to an award of the costs and reasonable attorneys' fees incurred in compelling the production to which they are entitled, to the extent permitted by law or equity.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Accounting)

247.     Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

31

248.   Plaintiffs hereby seek to compel Michelle, as the person who has usurped control over the LLC's finances, to render and judicially settle a full and accurate account of her stewardship of the LLC's money, income, and property, and to be surcharged for all sums found to be due and owing, including any sums past due and owing to Plaintiffs.

249.   A fiduciary relationship exists between Michelle and Plaintiffs.

250.   Since at least August 2021, Michelle has usurped and exercised exclusive control over the LLC, its bank accounts, its rental income, and its financial affairs, and has held herself out as its "Managing Member."

251.   One who assumes and exercises control over a limited liability company and its property owes fiduciary duties of good faith, loyalty, and care to the company and its members, and is obligated to account for her administration of the property entrusted to or taken under her control.

252.   Upon information and belief, the LLC's rental income and other funds were deposited into bank accounts that Michelle placed under her sole control, and Michelle alone has directed the receipt, disbursement, and disposition of those funds since 2021.

253.   Plaintiffs, as members of the LLC, are entitled to direct the distributions of the LLC and any income from the Unit, as well as receive their proportionate share of the LLC's profits and distributions under LLCL §§ 503 and 504.

254.   The financial affairs for which an accounting is sought are extensive and complex, spanning at least five years of rental income, operating expenses, capital-account activity, distributions, withdrawals, and transfers, including, upon information and belief, distributions to Michelle and the transfer of the LLC's funds to her personal, outside bank accounts—the details of which are known to Michelle and have been concealed from Plaintiffs, who have received no financial information from Michelle concerning the LLC since she usurped control in 2021.

32

255.   Plaintiffs have no adequate remedy at law.

256.   The full extent, character, and disposition of the LLC's income and property are peculiarly within Michelle's knowledge and control; the transactions are, upon information and belief, numerous and interrelated; and only a Court-ordered and supervised accounting can ascertain what Michelle received, what she disbursed, what she diverted, and what is owed to the LLC and to Plaintiffs.

257.   To the extent a demand for an accounting is required, this Complaint constitutes such a demand, and Michelle's refusal to provide any financial information concerning the LLC evidences the futility of any further demand.

258.   This claim is pleaded in the alternative to Plaintiffs' claims at law, pursuant to FRCP 8(d), and the assertion of Plaintiffs' legal claims shall not constitute a waiver of, or election against, Plaintiffs' entitlement to an equitable accounting.

259.   Plaintiffs are entitled to a judgment: (a) directing Michelle to render and file a full, complete, and verified account of her administration of the LLC's money and property from the inception of her control to the present, including all income received by or on behalf of the LLC, all expenses paid, all distributions and withdrawals, all transfers of LLC funds, and the status and history of each member's capital account, including whether the capital accounts of Plaintiffs have been altered, reduced, or closed; (b) judicially settling that account; (c) surcharging Michelle for all sums found upon the accounting to have been improperly taken, diverted, retained, or unaccounted for, together with prejudgment interest; and (d) directing payment to Plaintiffs of their proportionate share of all sums found due.

260.   Plaintiffs further seek an award of the costs and reasonable attorneys' fees incurred in connection with this claim, to the extent permitted by law or equity.

33

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Failure to Make Distributions Pursuant to LLCL §§ 503 and 504)**

261.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

262.    Because the LLC has never adopted an operating agreement, the allocation and distribution of the LLC's profits are governed by the default provisions of the LLCL, which apply in full and without modification.

263.    Pursuant to LLCL § 503, except as provided in an operating agreement, the profits and losses of a limited liability company are allocated among the members on the basis of the value of the contributions made by each member, as reflected in the records of the company.

264.    Pursuant to LLCL § 504, except as provided in an operating agreement, distributions of a limited liability company are likewise made on the basis of the value of the contributions made by each member.

265.    In the absence of an operating agreement, and as reflected in the LLC's own records, Plaintiffs are entitled to direct the distributions of the LLC as well as receive their proportionate economic share in the LLC's profits and distributions.

266.    No operating agreement, and no other instrument, authorized Michelle to direct and unilaterally control the allocation or distribution of all or substantially all of the LLC's profits and income to the exclusion of Plaintiffs.

267.    Upon information and belief, the LLC has generated substantial and continuous rental income and the Unit is currently being rented with all rental proceeds going to Michelle despite the total lack of any notice or consent of Plaintiffs.

268.    Notwithstanding that income, and notwithstanding Plaintiffs' rights as members, Michelle has caused the LLC to distribute substantial sums to herself, including, upon information

34

and belief, distributions to personal, outside bank accounts, and while distributing nothing to Plaintiffs.

269.    By unilaterally exercising improper control over the LLC's distributions and allocations, and by the related failure to distribute to Plaintiffs their proportionate share of the LLC's profits and income, while still distributing substantial sums to herself, Michelle has deprived Plaintiffs of their managerial and membership authority as well as the distributions to which they are entitled under LLCL §§ 503 and 504.

270.    Plaintiffs are entitled to a judgment directing the authority to manage and control distributions to Plaintiffs, as members, as well as the payment to Plaintiffs of their proportionate share of all profits and distributions of the LLC for the period of time since Michelle has, upon information and belief, seized control of its accounts and assets, together with prejudgment interest.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Conversion)**

271.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

272.    Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over identifiable property belonging to another, in derogation of the owner's rights.

273.    Money is subject to conversion where it is a specific, identifiable fund and there is an obligation to return or otherwise treat it in a particular manner.

274.    The rental income generated by the Unit, and the funds held in the LLC's bank accounts, constitute specific, identifiable property belonging to the LLC.

275. As members of the LLC, Plaintiffs hold a possessory interest in, and a legal right to, their proportionate share of that income and those funds, including their right to distributions under LLCL §§ 503 and 504.

276. Michelle intentionally and without authorization assumed and exercised dominion and control over the LLC's income and funds, retaining them for her own use and in derogation of Plaintiffs' rights.

277. Upon information and belief, Michelle: (a) in or around 2021, caused the LLC's bank accounts to be placed under her sole control and redirected the LLC's rental income and all billing to herself in California; (b) collected and retained the LLC's rental income exclusively for her own benefit; and (c) has caused the LLC to distribute to her, and withdrew for her own use, rental income and LLC funds from the LLC's account to an outside account.

278. The funds Michelle took and retained are specific, identifiable, and traceable, including through the LLC's books and records and bank statements reflecting the discrete deposits of rental income and the specific transfers and withdrawals described above.

279. Plaintiffs did not authorize or consent to Michelle's exercise of exclusive dominion over the LLC's income and funds, and Plaintiffs are entitled to their proportionate share of that income and those funds.

280. To the extent a demand is required, this Complaint constitutes Plaintiffs' demand for the return of their proportionate share of the converted funds, and Michelle—who has withheld all such funds, and all financial information concerning the LLC, from Plaintiffs since in or around 2021—has retained and continues to retain those funds in defiance of Plaintiffs' rights.

281. Michelle's conversion was intentional, willful, and undertaken for her own financial benefit and in conscious disregard of Plaintiffs' rights.

282.    By reason of the foregoing, Michelle has converted property in which Plaintiffs hold a possessory interest, and Plaintiffs have been damaged in an amount to be determined at trial, consisting of their proportionate share of the converted income and funds, together with interest.

### AS AND FOR A NINTH CAUSE OF ACTION
#### (In the Alternative, Unjust Enrichment)

283.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

284.    This cause of action is pleaded in the alternative, pursuant to FRCP 8(d), to Plaintiffs' claims for conversion and for failure to make distributions under LLCL §§ 503 and 504. To the extent this claim is inconsistent with those claims, or would afford duplicative recovery, it is pleaded in the alternative, and the assertion of one claim shall not constitute an admission against, or a waiver or election with respect to, any other.

285.    Under New York law, a claim for unjust enrichment requires that (a) the defendant was enriched, (b) at the plaintiff's expense, and (c) that equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover.

286.    Michelle has been unjustly enriched at Plaintiffs' expense.

287.    Upon information and belief, Michelle has collected and retained the LLC's rental income and has taken distributions and withdrawals of the LLC's funds for her own benefit, while paying nothing to Plaintiffs.

288.    Upon information and belief, Michelle now seeks, in addition, to sell the LLC's sole asset, the Unit, and to capture its proceeds of approximately $3 million, an asset in which Plaintiffs hold a membership interest.

289.    Every dollar Michelle has retained, and every dollar she seeks to capture, is money and value to which Plaintiffs are entitled and of which they have received none.

37

290.    It is against equity and good conscience for Michelle to retain the benefits she has received and seeks to receive.

291.    Those benefits were derived from property belonging to the LLC and to Plaintiffs as its members; they were obtained through Michelle's unauthorized seizure of the LLC's accounts and income and her exclusion of Plaintiffs from any share of the LLC's income and assets; and Michelle, Plaintiffs' own daughter, obtained and retained them in disregard of Plaintiffs' rights and while providing Plaintiffs no accounting or information whatsoever.

292.    The relationship between the parties is sufficiently close to support restitution: Plaintiffs and Michelle are family members and holders of certain interests in the same closely-held family company, and Michelle's enrichment is directly traceable to the LLC's income and property in which Plaintiffs hold their interests as members.

293.    By reason of the foregoing, Michelle has been unjustly enriched, and Plaintiffs are entitled to restitution and to disgorgement of the benefits Michelle has wrongfully obtained and retained, in an amount to be determined at trial, together with interest.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Pursuant to LLCL § 409 and Common Law)

294.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

295.    A claim for breach of fiduciary duty under New York law requires the existence of a fiduciary duty, misconduct constituting a breach of that duty, and damages caused by the breach.

296.    Michelle owes fiduciary duties of loyalty, good faith, and care to the LLC and to Plaintiffs as its members.

297.    Upon information and belief, since in or around August 2021, Michelle has assumed and exercised exclusive control over the LLC, its bank accounts, its income, and its affairs, and has held herself out as its "Managing Member".

38

298.    Under New York common law, and as reflected in LLCL § 409(a), a manager is required to perform his or her duties in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

299.    Similarly, an individual who assumes and exercises control over a limited liability company and its property owes fiduciary duties to the company and its members and may not disclaim the duties that attend that role.

300.    In the alternative, and only to the extent the Court determines that the Assignment conferred upon Michelle the status of a member and manager of the LLC, Michelle owes the same fiduciary duties of loyalty, good faith, and care in that capacity. This alternative is pleaded pursuant to FRCP 8(d), and the assertion of it shall not constitute an admission against, or a waiver or election with respect to, Plaintiffs' principal position that Michelle is not a member of the LLC.

301.    Michelle has breached her fiduciary duties to the LLC and to Plaintiffs, including by:

(a) attempting to sell the LLC's sole asset, the Unit, without the vote of a majority in interest of the members required by LLCL § 402(d)(2), and without notice to or the consent of Plaintiffs;

(b) seizing the LLC's bank accounts in 2021 and diverting the LLC's rental income to accounts under her sole control;

(c) causing or permitting distributions and transfers of the LLC's funds to herself and to outside accounts for her own benefit, including, upon information and belief, distributions and transfers to her own personal, outside bank accounts of rental income and LLC funds, while making no distributions to Plaintiffs;

(d) failing since 2021 to provide Plaintiffs with any tax returns or other tax documents, financial statement, or other financial information concerning the LLC, and refusing to account for her stewardship; and

(e) concealing the LLC and its rental income when questioned under oath at her February 26, 2026 deposition, including by omitting the LLC's rental income from her sworn identification of her income sources and by omitting the LLC from her sworn identification of the entities in which she holds an interest.

302.   Michelle undertook the foregoing acts and omissions in bad faith, for her own personal financial benefit, and in conscious disregard of the interests of the LLC and of Plaintiffs.

303.   Pursuant to LLCL § 417(a), Michelle's conduct is not, and cannot be, subject to exculpation, because it was undertaken in bad faith, involved intentional misconduct or a knowing violation of law, and resulted in a financial profit and other advantage to which she was not legally entitled.

304.   Michelle's breaches were willful, wanton, and undertaken in conscious disregard of Plaintiffs' rights and for her own benefit.

305.   As a direct and proximate result of Michelle's breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial, including not less than their proportionate share of the income and funds Michelle has diverted and the diminution in the value of their interests in the LLC, together with interest.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
**(Constructive Trust)**

306.   Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

307.   Under New York law, a constructive trust may be imposed to prevent unjust enrichment where there is (a) a confidential or fiduciary relationship, (b) a promise or

understanding, (c) a transfer in reliance thereon, and (d) unjust enrichment. These factors are applied flexibly and as a guide; they are not rigid requirements, and the equitable purpose of the remedy, the prevention of unjust enrichment, controls its application.

308. A confidential and fiduciary relationship existed between Michelle and Plaintiffs.

309. Michelle has been unjustly enriched at Plaintiffs' expense.

310. Michelle has usurped control of an LLC whose only asset is worth approximately $3 million; she has seized the LLC's bank accounts and, on information and belief, commingled the LLC's funds with her own and exercised dominion over them as if they were exclusively hers; she has retained the LLC's rental income and taken distributions and transfers of the LLC's funds for her own benefit; and she now seeks to sell the Unit and retain the proceeds.

311. Were Michelle permitted to sell the Unit and keep the proceeds, she would be unjustly enriched by, among other sums, Plaintiffs' share of approximately $3 million in sale proceeds and their share of the LLC's undistributed rental income.

312. Equity and good conscience require that Michelle not be permitted to retain, or to place beyond the reach of Plaintiffs and this Court, the LLC's sole asset, the proceeds of any disposition of that asset, or the LLC's funds and income.

313. The property upon which Plaintiffs seek a constructive trust is identifiable and traceable, including the Unit itself, the LLC's bank accounts, outside accounts that, upon information and belief, belong to Michelle herself, to which she has transferred LLC funds, and any rental income deposited into and disbursed from the LLC's accounts.

314. The Unit is unique real property, and its sale and conveyance to a third party would cause irreparable harm that cannot be adequately remedied by money damages.

315.    Plaintiffs have no adequate remedy at law, and the imposition of a constructive trust is necessary to prevent Michelle's unjust enrichment and to preserve the Court's ability to grant complete relief.

316.    Plaintiffs are accordingly entitled to the imposition of a constructive trust, for the benefit of Plaintiffs in accordance with their true membership and ownership interests in the LLC, upon: (a) the Unit; (b) any proceeds of any sale, transfer, conveyance, encumbrance, or other disposition of the Unit; (c) any bank or other account holding the LLC's funds, or into which the LLC's funds have been deposited, including the accounts under Michelle's personal control which have been commingled with the LLC's accounts; and (d) any other assets traceable to the LLC's funds or income; together with a judgment directing that such property be held subject to the constructive trust, restraining any sale, conveyance, or encumbrance of the Unit inconsistent with the trust, and, as appropriate, directing conveyance of the Unit or the appropriate interest therein to the members entitled to it.

317.    A judgment imposing a constructive trust upon the Unit would directly affect the title to, and the possession, use, and enjoyment of, the Unit.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment as follows:

A.    On the First Cause of Action, a declaratory judgment pursuant to FRCP 57 and CPLR 3001, declaring that: the Assignment conferred upon Michelle no membership, ownership, voting, or managerial interest in the LLC and Michelle is not a member or owner of the LLC in any capacity; the Assignment conveyed to Michelle, at most, a bare economic assignee's right to receive distributions and allocations of profits and losses, when made, corresponding to her proportionate economic interest; Arthur is a member of the LLC with a residual economic interest of no less than 0.5%; Esther is a member of the LLC with a residual economic interest of no less than 0.5%; Plaintiffs are the only members of the LLC and hold all membership, ownership,

voting, and management rights therein; and any sale, transfer, conveyance, encumbrance, or other disposition of the Unit or any interest in the LLC attempted by Michelle is void and of no legal force or effect;

B.      On the Second Cause of Action, a declaratory judgment pursuant to FRCP 57 and CPLR 3001 declaring that the Unit is the sole asset of the LLC; that any sale, transfer, conveyance, mortgage, or encumbrance of the Unit constitutes a transfer of all or substantially all of the assets of the LLC within the meaning of LLCL § 402(d)(2); that Michelle lacks any authority to sell, transfer, convey, mortgage, encumber, list for sale, or otherwise dispose of the Unit or any interest therein; that no such disposition may be effected without the affirmative vote or written consent of a majority in interest of the members, which has not been given; and that any such disposition attempted or effectuated by Michelle is void and of no legal force or effect;

C.      On the Third Cause of Action, an order pursuant to FRCP 66, CPLR § 6401, and the equitable power of this Court, appointing a temporary receiver during the pendency of this action to take custody of, preserve, and administer the Unit, the LLC's bank and financial accounts, and the LLC's books and records; to collect, hold, and safeguard the LLC's rental income and other funds; to pay the LLC's necessary and ordinary carrying costs so as to preserve the Unit; to prevent any sale, transfer, encumbrance, or dissipation of the LLC's assets; and to account to the Court, with such further powers and upon such terms as the Court deems just and proper;

D.      On the Fourth Cause of Action, a judgment declaring that the office and title of "Managing Member" do not exist in the LLC, that Michelle's assumption of that title and her purported managerial authority are void and of no legal force or effect, and that Michelle has no authority to manage the LLC or to act on its behalf in any capacity; and, in the alternative, to the extent the Court determines that Michelle holds or has exercised any managerial role, a judgment confirming her removal from that role pursuant to LLCL § 414; and, in either event, a judgment

43

permanently enjoining Michelle from holding herself out as "Managing Member" of the LLC and from taking any action, or purporting to exercise any authority, on behalf of the LLC;

E.      On the Fifth Cause of Action, an order directing and compelling Michelle and the LLC to produce, for Plaintiffs' inspection and copying, all of the LLC's books and records as set forth therein, together with the costs and reasonable attorneys' fees incurred in compelling such production, to the extent permitted by law or equity;

F.      On the Sixth Cause of Action, a judgment directing Michelle to render and file a full, complete, and verified account of her administration of the LLC's money and property from the inception of her control to the present; judicially settling that account; surcharging Michelle for all sums found upon the accounting to have been improperly taken, diverted, retained, or unaccounted for, together with prejudgment interest; and directing payment to Plaintiffs of their proportionate share of all sums found due;

G.      On the Seventh Cause of Action, a judgment directing payment to Plaintiffs of their proportionate share of all profits and distributions of the LLC for the period of time that Michelle has seized control of its accounts and assets, upon information and belief, from 2021 to the present, together with prejudgment interest;

H.      On the Eighth Cause of Action, a judgment awarding Plaintiffs damages for conversion in an amount to be determined at trial, consisting of their proportionate share of the converted income and funds, together with interest;

I.      On the Ninth Cause of Action, in the alternative, a judgment awarding Plaintiffs restitution and disgorgement of the benefits Michelle has wrongfully obtained and retained, in an amount to be determined at trial, together with interest;

J.      On the Tenth Cause of Action, a judgment awarding Plaintiffs compensatory damages for breach of fiduciary duty in an amount to be determined at trial, including their

44

proportionate share of the income and funds diverted and the diminution in the value of their interests in the LLC, together with interest;

K.      On the Eleventh Cause of Action, a judgment imposing a constructive trust, for the benefit of Plaintiffs in accordance with their true membership and ownership interests, upon the Unit, any proceeds of any sale or other disposition of the Unit, any account holding or into which the LLC's funds have been deposited or commingled, and any other assets traceable to the LLC's funds or income; directing that such property be held subject to the constructive trust; restraining any sale, conveyance, or encumbrance of the Unit inconsistent with the trust; and, as appropriate, directing conveyance of the Unit or the appropriate interest therein to the members entitled to it;

L.      Awarding Plaintiffs prejudgment and post-judgment interest on all sums awarded;

M.      Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in this action, to the extent permitted by law or equity; and

N.      Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 21, 2026

**HOLLAND & KNIGHT LLP**

By s/*Keith M. Brandofino*

Keith M. Brandofino
Alexander Lycoyannis
Claire A. Bjerke
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3200
keith.brandofino@hklaw.com
alexander.lycoyannis@hklaw.com
claire.bjerke@hklaw.com

*Attorneys for Plaintiffs*
*Arthur Haruvi and Esther Haruvi*

## VERIFICATION

I, Esther Haruvi, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.  I am a plaintiff in the above-captioned action.

2.  I have read the foregoing Verified Complaint and know its contents.

3.  The Verified Complaint is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4.  The grounds for my belief as to all matters not stated upon my own knowledge are the books, records, and documents of 51D Realty LLC, my personal knowledge of the facts and circumstances of this action, and the investigation conducted by my attorneys.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**ESTHER HARUVI**

Executed on July 21, 2026.

46